The facts and situation leading up to the present proceeding are:
The New Jersey State Bar Association, through its president and chairman of its committee on ethics and grievances, by its verified petition dated April 29th, 1932, represented to the late chancellor, Edwin Robert Walker, certain known or believed improper practices prevailing in the court of chancery. *Page 608 
These representations appear, from the said petition, to have gone in five directions:
1. That the administration of receivership and trust estates had been a matter of patronage rather than trust, resulting in the allowance of large and exorbitant fees by vice-chancellors to receivers and counsel.
2. That the situation last referred to had by the governor and the public press been referred to as a "receivership racket."
3. That there existed a well settled impression in the public mind that it is necessary to retain certain members of the bar in order to secure the appointment of receivers or to successfully avoid such appointment, such employment calling for the payment of exorbitant fees resulting in obtaining the desired results regardless of the exact justice of the particular causes.
4. That so-called "ambulance chasing" in receivership matters had become a practice through and by the means of certain lawyers procuring claims of creditors and stockholders of corporations and making the latter a prey to insolvency and receivership proceedings.
5. That the repeated appointment by certain vice-chancellors of the same person as receiver and a certain coterie of solicitors, counsel, masters and other officers had created the belief in the public mind that receivership and other fees had directly or indirectly been "split" by such officers among themselves and that certain vice-chancellors had participated therein directly or indirectly.
The prayer of the petition was that the chancellor appoint a master to conduct an investigation into the practice of members of the bar soliciting receivership cases and the handling thereof, also into the administration of such estates, including fees allowed and paid to receivers and other officers and make report to the chancellor to the end that all officers of the court who have been unfaithful to the trust reposed in them be removed and that such estates in the future be administered for the benefit of the trust and not as a matter of patronage. *Page 609 
In compliance with said petition, the late chancellor, on May 2d 1932, made and entered the following order:
"Upon reading and filing the verified petition of the New Jersey State Bar Association and it appearing that an investigation as therein prayed should be made, and the committee of one hundred (100), representing certain business and trade groups of this state, appearing by counsel and several of the members of the executive committee and concurring orally in the said prayer of the said petition;
"It is accordingly on this second day of May, 1932, ordered that Charles L. Carrick, Esq., one of the advisory masters of this court, be and he hereby is appointed master and authorized and directed to conduct an investigation into the practice which has existed and which exists on the part of members of the bar in soliciting receivership cases and the handling thereof;
"Into the administration of receivership and other trust estates in the past and present, including the fees allowed and paid to receivers, solicitors for and counsel with receivers and other trustees, auctioneers, appraisers, accountants, masters and any other officers of this court; including fees paid to officers or attorneys in the administration of the affairs of closed banks and other financial institutions; and whether or not any fees allowed to any of such officers have been split, and with whom, and whether any officer of the court has benefited directly or indirectly in any fees allowed any other officers or appointees of the court.
"It is further ordered that such master shall commence hearings within ten (10) days from the date hereof at such place or places within this state as he may designate, and he is permitted to hold his hearings in any chancery chambers in this state.
"It is further ordered that such master be and he is hereby authorized and empowered to issue any subpoenas that may be necessary in the course of investigation to compel the production of witnesses, books, documents or other evidence before him.
"It is further ordered that such master be, and he is hereby *Page 610 
authorized, after consultation with the officers of the State Bar Association and the executive committee of the committee of one hundred (100), to appoint counsel in such proceedings; said counsel, with the approval of the master may designate associate counsel, and such legal, clerical, investigating and stenographic assistance as may be necessary properly to conduct such investigation, but at the cost of the State Bar Association unless the legislature shall make appropriation therefor, except a stenographer allowed by statute.
"It is further ordered that the said master make a report to the chancellor with all convenient speed. Said report may be submitted in sections or chapters from time to time as the master shall direct.
"It is further ordered that the clerk of this court shall co-operate with the master and send him as though he were a vice-chancellor to whom the cause had been referred, the files in any designated cause and/or furnish him with copies of any papers required, free of costs or other fees."
Under such order the master proceeded to investigate proceedings in receiverships had before Alonzo Church, Esq., one of the vice-chancellors, and under date of July 25th, 1932, made a report to the late chancellor in which he concluded his findings of facts as follows: "The conclusion is inescapable that the vice-chancellor, at the time of his suspension from office, had lost the confidence of the bar, and was wholly unfit to discharge the duties of his office." The late chancellor endorsed this report "accepted, approved and ordered filed, July 27th, 1932."
Here it should be observed that on May 2d 1932, concurrently with the order of reference before set forth, Chancellor Walker made an order relieving Vice-Chancellor Church from all duties by recalling all references theretofore made, prohibiting further references and striking his name from the roll of vice-chancellors "to the end that he shall not receive compensation for work not done by him."
Subsequent to the report of the master before referred to and on September 15th, 1932, Vice-Chancellor Church resigned and the question thereupon arose as to his right to *Page 611 
receive his salary from May 2d 1932, when the late chancellor undertook to strip him of his powers and functions to the date of his resignation. This matter being before the comptroller, that officer called upon the attorney-general for his opinion and was advised that salary for such period was legally due and payable.
The master then turned his investigation toward the administration of Vice-Chancellor Fallon, who on January 9th, 1933, presented to me his petition setting up, inter alia, much, if not all, of the proceedings hereinbefore recited by me, and that since July, 1932, the master had undertaken to make an investigation into his personal affairs, business transactions, examining his private bank books, papers and records, also his judicial acts in receivership and other cases, examining witnesses under oath at both private and public hearings, of which a stenographic record was kept, all of which the master intends to file with the clerk of the court as a part of his report; that all of such proofs were taken ex parte and without his presence except those of October 13th, 1932, when he appeared at the request of the master and submitted to examination as to certain of his judicial acts and personal affiairs; that on November 23d 1932, there was served upon him a paper entitled "memorandum of general subjects to be covered in examination of Vice-Chancellor Fallon's conduct of receivership cases," containing charges of alleged improper conduct in relation to his judicial acts which he was advised he might answer at a public hearing to be conducted by the master, of which offer he did not avail himself; that at said public hearings the master re-examined such witnesses who had testified at the private hearings, or such of them as could be produced, upon the same or so much and such of the topics as the master considered necessary and caused to be read into the record the privately taken testimony of witnesses who could not be produced, and included therein were excerpts of petitioner's testimony taken at the private hearing October 13th, 1932, all of which was done for the sole purpose of giving the same publicity. The petition further sets forth that the master has exceeded the authority vested in him and has *Page 612 
acted beyond the scope of the order of reference of May 2d 1932; has arrogated to himself judicial functions and that the petitioner is informed and believes the master intends in making the investigation in relation to him to pursue the same course as he did respecting Vice-Chancellor Church and intends shortly, without notice, to file with the clerk of the court an ex parte
report which report will not be confined to presenting the testimony but will include the master's comments, conclusions and recommendations, all of which, without authority, warrant or proper hearing thereby usurping judicial functions. The petition further avers that the petitioner holds a constitutional office, independent of and beyond the control of the chancellor; that while the chancellor is vested with power of appointment of vice-chancellors he has no power to discipline, suspend or discharge upon hearing or otherwise; that the order of May 2d 1932, does not authorize the master to pry into the private affairs or judicial conduct of the petitioner and was not intended to so authorize the master and if it was and is so intended to do it is without legal force, but in fact said order only authorizes the master to investigate certain alleged practices and merely report the testimony adduced before him and that without conclusions, comments or recommendations. The prayer of the petition is:
1. That the order of reference be set aside.
2. That it be limited in its scope and effect to the subject-matters expressed therein without inquiry into the judicial acts or private business affairs of the petitioner.
3. That the testimony respecting the private business affairs and judicial acts of the petitioner be suppressed.
4. That the report of the master should be suppressed.
5. That the report should be limited in presenting the testimony without comment, recommendation or conclusion of the master.
6. That the framing, publishing and filing of the report be stayed pending the hearing.
In obedience to the prayer of said petition I made an order directed to Charles L. Carrick, Esq., master, and the New *Page 613 
Jersey State Bar Association to show cause before me on January 27th, 1933, respecting the matters contained in the prayer of the petition and in and by said order I stayed all proceedings under the order of reference of May 2d 1932, until my further order.
Both the master and the New Jersey State Bar Association filed answers.
The answer of the master, admits, inter alia, that since July, 1932, the investigation was directed to receivership matters theretofore pending before Vice-Chancellor Fallon; that numerous witnesses have been examined at private and public hearings; denies that it is intended to file a stenographic record of any such testimony with the clerk of the court, but it is intended to follow the same course pursued on filing the first report which is to present the same in the first instance to the chancellor, tendering all testimony for such disposition as the chancellor may make; that the examination into Vice-Chancellor Fallon's personal and business affairs extended only so far as necessary to disclose whether or not "he had intermingled his private business affairs with the receivership estates administered by him and whether or not fees allowed by him to his appointees had been split with him and whether or not he had benefited directly or indirectly in any fees allowed by him;" that the taking of testimony at private hearings was in accord with the procedure pursued in the investigation upon which the first report was based; that a copy of all testimony taken was given to Vice-Chancellor Fallon for examination and study prior to taking testimony at public hearings and that he was given an opportunity of appearing at private and public hearings, to testify at both and also submitting any statement he desired; that he did appear before the master October 13th, 1932, at which meeting and at all others the master presided and they were conducted as orderly trials; that such investigation has at all times been conducted fairly, impartially and thoroughly; that on or about November 23d 1932, counsel to the master mailed to Vice-Chancellor Fallon a memorandum of subjects to be covered at public hearings, a copy of which is attached to the *Page 614 
petition filed in this cause and that he declined to appear or testify at the public hearings; that at such public hearing such facts as appeared sufficiently important and germane were adduced by the examination of witnesses who had been examined at private hearings and additional witnesses and by reading into the record the testimony of certain witnesses examined at private hearings and who were not available at public hearings and also made necessary by the petitioner's failure to appear, and to the end that such things as he said at the private hearing and admissions might become a part of the public record upon which the master's report would be predicated; that it was not the purpose of the master to give publicity to the matters adduced at the public hearings but such public hearings were held in obedience to the order of reference under which he is acting; that the purpose of the private hearings was to exclude from consideration at public hearings all matters not supported by credible testimony; that the proceedings have been carried on with respect to the petitioner in the same manner as those preceding the master's first report and without complaint until the filing of the petition of January 9th, 1933; that on October 13th, 1932, such proceeding was outlined and explained to the petitioner and by him approved and that the petitioner was further advised that producing testimony at private hearings might further limit or entirely eliminate the necessity of public hearings but he did not avail himself of such opportunity, but on the night of the day preceding the closing of the public hearings released to the press of Hudson and Essex counties a lengthy statement, the original of which was filed with the master the next morning; that the master denies that he has exceeded the scope of the order of reference; that it has been his intention to follow the same course as pursued by him in his report of July 25th, 1932, except as the chancellor might at a scheduled conference of January 11th, 1933, have directed, changed or modified; that the master neither affirms or denies the power of the chancellor to remove or discipline a vice-chancellor nor his right to have made the order of reference of May 2d 1932; the master denies that the order *Page 615 
of reference of May 2d 1932, does not authorize him to report conclusions from the testimony taken before him or recommendations with relation thereto or criticism of the judicial acts of vice-chancellors; that the master and his counsel laid before the present chancellor shortly after his appointment the plan of investigation pursued and contemplated and he directed the master to proceed as rapidly as possible and that there be delivered to him, the chancellor, a copy of the memorandum of matters to be inquired into at the public hearings and this was done and such memorandum was retained by him without comment or criticism; and finally so far as the order allowed under Vice-Chancellor Fallon's petition requires the master to show cause why the order of reference of May 2d 1932, should not be vacated or limited in its scope he submits that he is merely an officer of the court, in no sense a party in interest, and that an order to revoke or modify is entirely within the power of the chancellor and the master is not required to justify the discretion of the late Chancellor Walker in making such order or of the present chancellor in continuing the same and he gives assurance that he will abide by any direction to him by the present chancellor without injunctive process or other order.
The answer of the New Jersey State Bar Association after admitting certain formal portions of the petition, asserts that the first report of the master under date of July 25th, 1932, was proper in all respects under the power lodged in him by order of reference of May 2d 1932, and was received by the late Chancellor Walker as proper and directed by him to be filed and no exceptions were taken thereto; that it, the association, has no information as to the proceedings taken by the master as they refer to Vice-Chancellor Fallon except as obtained through the press; that under the constitution of New Jersey the court of chancery consists solely of the chancellor; that the office of vice-chancellor is created by statute and that the judicial duties of such officers are subject to control by the chancellor who may refer or refuse to refer matters to them; that it denies that the master has in any manner exceeded the authority reposed in him by the order *Page 616 
of reference, but has performed his duties without fear or favor, that it is in the public interest that he should make and file his report which it believes will be fair and just and that if the vice-chancellor is innocent of wrong-doing the master will so report and if he report to the contrary the same may be overruled by the chancellor upon exceptions thereto and that the propriety of such a report can best be determined when it is filed; that the present investigation has received wide publicity and should the chancellor at this late day revoke the order of reference or direct the master not to file his report it would enhance public distrust and destroy confidence in the court, therefore the investigation should proceed and the master be permitted to make his report.
I have found it to be necessary to go to this length in the presentation of the matter as it is before me so that the condition and situation may be clearly set down and understood. In large measure, if not entirely, the facts are not in dispute.
So far as they are important and necessary in disposing of the matters raised under the petition, answers and order to show cause they are not in material dispute.
After a complete and full hearing under the order to show cause, counsel for petitioner and the New Jersey State Bar Association filed briefs, all of which are exhaustive upon the legal questions involved, and which, in order to shorten, as much as possible, this memorandum and conclusion, I am filing, so that they become a part of the record, readily accessible for consideration in conjunction herewith.
In considering the matters calling for my determination I shall give attention first, naturally and properly, to the matters raised by counsel for the petitioner. These go in several directions.
1. There was no power in the chancellor to conduct such an investigation as called for by his order of May 2d 1932, unless it arises from the general jurisdiction of the court and then it must be confined to the limits of that jurisdiction and cannot reach to an investigation of the judicial acts of the vice-chancellors. *Page 617 
Conceding, as I think it must be, that the chancellor has no direct and express removal, suspension or disciplinary power over vice-chancellors and further has no specific power of investigation of their official acts or proceedings, the general jurisdiction of the court, that is of the chancellor, must be looked to for such authority. These officers were referred to by the late Chancellor Walker in his deliverance (In reVice-Chancellors, 105 N.J. Eq. 759), as "head masters."
It needs no argument or citation of authority to force the conclusion that any matter directly referred by the chancellor to the vice-chancellors for hearing and advice or automatically coming before a vice-chancellor under the rules of the court, is returned to the chancellor, with conclusions and the order or decree advised thereunder. There is nothing compelling the chancellor to make the order or decree so advised and it is a nullity until his signature is attached.
Theoretically the chancellor examines and considers each matter as heard and advised. In practice this is humanly impossible, and the chancellor must rely upon the integrity of the vice-chancellors and their judicial uprightness, who are, in every sense, his confidential agents, to correctly, honestly and unbiasedly carry on the work of the court.
Of course, once the chancellor has affixed his signature to an order or decree so advised, the orderly procedure to rectify any error is by appeal to the court of errors and appeals, but until a decree advised is so signed it is entirely within the control of the chancellor.
Certain it must be, and is, that misconduct or irregularities in judicial acts or procedure before, or at the hands of these judicial confidants which may come to the attention of the chancellor are matters of personal concern to and matters of investigation by him as not only the head of the court, but the court, and like all other matters, proper subjects of reference to a master of the court, to be selected by the chancellor, for the purpose of orderly inquiry and report.
Where misconduct, wrong-doing, incompetence or irregularity is shown to exist the question of direct remedy through the chancellor by removal or suspension is not necessarily important and there may be no call for its exercise. *Page 618 
That courts have, by necessity, inherent if not express authority to investigate the conduct of its officers and practices employed would appear to be generally recognized and conceded. People, ex rel. Karlin v. Culkin, Sheriff, 248 N.Y. 465; 162 N.E. Rep. 487; In re Investigation by Bar Association ofHudson County, 109 N.J. Law 275; Rubin v. State, 194 Wis. 207;216 N.W. Rep. 513; Capps v. Core (Court Appeals, Ky., 1929),21 S.W. Rep. (2d ed.) 266.
I am convinced not only that the power of inquisition and investigation exists, but that upon a substantial representation of improper conduct and practices a duty so to do arises, and the power may be exercised by the chancellor himself or by and through such master of the court as he may by order designate for that purpose.
Upon this point I conclude that Chancellor Walker was clearly within his legal right and power in making the order of reference of May 2d 1932.
2. That the order of May 2d 1932, is functus officio. Here it is argued that the proceeding was not a judicial function arising from any judicial proceeding and therefore did not survive the period of occupancy of the office of the chancellor who made it. In other words, upon the demise of Chancellor Walker on October 14th, 1932, the order in question and all proceedings thereunder came to an end.
Perhaps by strict legal reasoning this is so, but it was at my hand, as chancellor, to make a new order.
Furthermore, upon my assuming the duties of chancellor I did not choose to consider the order of May 2d 1932, a nullity, but, on the contrary recognized its existence and continuance.
Whether or not the making of the order, originally, was wise or necessary is entirely beside the question at this time. The integrity of the court and its proceedings had been seriously questioned and substantially attacked, demanding, in my judgment, my official recognition of the validity and continued effectiveness of this order of my predecessor. Nothing, in my judgment can, or will, be permitted to be taken upon this ground. *Page 619 
3. The language of the order of May 2d 1932, under which the master in this proceeding has undertaken to act defines the limit of the powers of the master to investigate and report.
Here it is urged that the language of the order of reference does not reach to an investigation of vice-chancellors.
With this I do not agree. Whatever other standing a vice-chancellor may enjoy he certainly is an officer of the court. The order in question specifically directs the investigation by the master of officers of the court.
4. The master has no authority under the order of reference to criticize the judicial actions of a vice-chancellor, to comment upon testimony taken before him or make recommendations.
Here it is argued that by the language of the order the master was authorized only to take proofs and report them to the chancellor without conclusion or comment. It is true that the master is named as an advisory master and again as master and the order is not in terms and language such as is usually employed in references to vice-chancellors or advisory masters. However, it was interpreted by Chancellor Walker, upon the first report made to him thereunder, as an order addressed and directed to an advisory master. Such I conclude it is and it is so interpreted by me with a single exception and reservation which I will refer to in my findings at the conclusion hereof.
5. A vice-chancellor within the sphere of his activities is an independent judge, and, as such, his judicial acts cannot be questioned by the chancellor except in a proceeding to review a particular decision made.
Under this it is urged and argued that the acts of a judge may not be questioned or inquired into collaterally. I have concluded that the argument under this point is entirely beside the question now before me. The principle argued is of course established, and soundly so, where the attempt and purpose of the collateral attack is to reverse, set aside or modify a particular judgment, decree or finding. That is not the situation here. No particular, nor in fact any, finding of any vice-chancellor is attempted to be affected by the present inquiry nor will it nor can it be. *Page 620 
At the expense of repetition — charges were made that certain practices, particularly in receivership matters existed which were improper, that officers of the court had not in such proceedings exercised judicial integrity, that allowances had been exorbitant and at least a suspicion was created that vice-chancellors and other officers of the court were profiting and participating therein, directly or indirectly.
The purpose of the inquisition upon the part of the chancellor was to definitely ascertain whether or not these charges were true, to what extent and who were guilty of such practices.
It is perfectly apparent, therefore, that the principle or doctrine urged under this point has no application to the matter in hand.
6. The chancellor is without power to remove a vice-chancellor be that office statutory or constitutional. This I concede.
7. The chancellor is without power to suspend a vice-chancellor. This I also concede.
8. Master Carrick is without authority to investigate the personal affairs and judicial actions of a vice-chancellor and is without authority to prefer, hear or act upon charges against a vice-chancellor. The master's investigation was conducted in violation of the fourteenth amendment of the United States constitution in depriving the petitioner herein of the protective guarantee embodied in the phrase "due process of law" and in the concomitant safeguards made part of the law of the land and deemed an essential of judicial procedure.
The contention hereunder is that the master had no authority to inquire into the petitioner's personal affairs and judicial acts or to charge him with acting improperly or to render judgment upon his personal or judicial acts, make such deductions from the testimony or make recommendations to the chancellor with respect thereto. Further that testimony taken at private hearings out of the presence of the petitioner and without the benefit of cross-examination is proposed to be used, in part, as a basis of the master's findings. *Page 621 
That under the circumstances the master is both prosecutor and judge.
All of this, of course, presupposes a report by the master adverse to the petitioner, a thing which may not take place, is not admitted or established.
These are all of the matters raised and urged by the petitioner in the oral argument of his counsel and by the brief filed in his behalf.
There are two briefs filed by the New Jersey State Bar Association, one by each of counsel appearing and representing it under the order to show cause.
One brief deals with the status of vice-chancellors, that is, whether they are constitutional or statutory officers.
I have most decided convictions upon this question which need not be expressed nor need the contention one way or the other be here decided because I conclude it is entirely immaterial to the decision of the matter before me.
The other brief deals with the right, power and authority of the court to investigate itself.
This question I have already passed upon, reaching a conclusion in entire accord with such contention.
This disposes of all questions raised by the respondent, New Jersey State Bar Association, and argued both orally and in the briefs of its counsel.
My conclusion is that the master should not be further stayed or disturbed in his proceedings under the order of reference of May 2d 1932, and that I should not in anywise control his actions thereunder except that his report shall not contain any advice or recommendation as to any action, judgment or order to be made by me respecting the said petitioner.
In all other respects the prayer of the petition is denied and the order to show cause, with the foregoing reservation, is discharged.
At the conclusion of the argument of the order to show cause application was made to me by counsel for the petitioner, for a stay of all proceedings under the order of reference, so far as they affected the petitioner, in the event of a finding *Page 622 
by me adverse to him so that an appeal might be taken and perfected by him.
Here it may be said that the respondent, New Jersey State Bar Association, contends that any finding by me in these proceedings is not subject to review by appeal to the court of errors and appeals. This is not a question calling for determination by me but by the court of errors and appeals.
The application for stay is granted as against the master as to any further or other acts upon his part respecting or directed toward the petitioner for the period of twenty (20) days from the date of the filing of the order discharging the order to show cause, and further, if within that time the petitioner serves and files a notice of appeal and from thence until with proper and due diligence he shall have made application for a stay pending his appeal to the court of errors and appeals and such application shall have been passed upon by that court. *Page 623